**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| ROBERT CAULDWELL,<br>                    Appellant, | DOCKET NUMBER<br>DC-1221-16-0458-W-1 |
|                    v. | |
| FEDERAL RESERVE SYSTEM,<br>                    Agency. | DATE: December 2, 2016 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Jeff Duncan, Jacksonville, Florida, for the appellant.

Nicole Heiser, Esquire, Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1    The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. Generally, we grant petitions such as this one only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review and AFFIRM the initial decision AS MODIFIED.

¶2        The appellant held the position of Examiner in the agency's Southeast Region of the Supervision, Fair Lending and Enforcement Division (SEFL), Consumer Financial Protection Bureau (CFPB).  Initial Appeal File (IAF), Tab 8 at 60.  Beginning on September 5, 2013, he also served as the elected Chapter President for the National Treasury Employees Union (NTEU) Chapter 335, *id.* at 43.  On June 25, 2015, the appellant testified at a hearing before the House Financial Services Committee, Subcommittee on Oversight and Investigations, entitled "Examining Continuing Allegations of Discrimination and Retaliation at the Consumer Financial Protection Bureau."  IAF, Tab 1 at 6, Tab 9 at 11-14.  On October 8, 2015, the appellant's position as Chapter President ended, and, almost immediately, he began a period of leave due to medical issues.  IAF, Tab 8 at 43. Although he continued to officially hold the position of Examiner, he never again performed those duties, ultimately submitting a request for disability retirement, which, according to the record before us, remains pending before the Office of Personnel Management.  *Id.* at 46.

¶3        On November 24, 2015, the Regional Director for the Southeast Region of the SEFL sent out the 2016 staffing assignments.  *Id.* at 43.  Because a new field manager had been promoted recently, the agency made a number of assignment changes to ensure equitable reporting relationships among the existing field

managers to whom the examiners reported. The appellant was 1 of 15 examiners whose reporting structure changed and 1 of 6 examiners assigned to the newly appointed field manager. Balancing administrative duties among the field managers did not result in any change to the pay, grade, duty station, work assignments or duties, responsibilities, or other working conditions for the appellant or any of the other examiners. *Id.*

¶4 According to the appellant, he filed a complaint of whistleblowing retaliation with the Office of Special Counsel (OSC) on March 9, 2016, IAF, Tab 1 at 5, and, on March 21, 2016, OSC advised him that it had terminated its inquiry into his claims, *id.* at 8.

¶5 The appellant subsequently filed an IRA appeal in which he alleged that, in retaliation for his assisting other employees as union President in filing grievances, equal employment opportunity (EEO) complaints, and unfair labor practices (ULPs), and for testifying before the Congressional subcommittee at the June 2015 hearing, the agency reassigned him away from a supervisor he worked well with, slowed his disability retirement application process, and released his confidential EEO information to Congress during the hearing. *Id.* at 6. He requested a hearing before the Board. *Id.* at 2.

¶6 The agency moved to dismiss the appeal for lack of jurisdiction on the basis that the appellant failed to exhaust his remedy before OSC and failed as well to nonfrivolously allege that he engaged in protected activity that contributed toward the agency's decision to take a personnel action against him. IAF, Tab 8 at 12-18. The administrative judge issued an Order on Jurisdiction and Proof Requirements, IAF, Tab 16, to which both parties responded, IAF, Tabs 17-18.

¶7 Thereafter, in an initial decision based on the written record, the administrative judge found that the record showed that the appellant filed a complaint with OSC and that OSC subsequently advised him that it was closing its investigation. IAF, Tab 19, Initial Decision (ID) at 3. The administrative judge found, however, that the appellant did not submit a copy of his OSC

complaint, and otherwise failed to show that he informed OSC of the precise ground of his whistleblowing allegations so as to provide a sufficient basis for OSC to pursue an investigation that might lead to corrective action, and that he therefore failed to satisfy the exhaustion requirement. ID at 9-11. Accordingly, the administrative judge dismissed the IRA appeal for lack of jurisdiction. ID at 1, 11.

¶8 The appellant has filed a petition for review,[2] Petition for Review (PFR) File, Tab 1, the agency has responded in opposition, PFR File, Tab 3, and the appellant has replied thereto, PFR File, Tab 4.

¶9 On review, the appellant argues that he did exhaust his remedy before OSC but that he did so, not by means of a written filing, but through a telephone conversation. PFR File, Tab 1 at 5-6, Tab 4 at 5, Tab 9 at 14. Specifically, he contends, as he did below, that, sometime after the Congressional subcommittee hearing at which he testified and at which he claims the agency improperly released certain information about him, someone reached out to OSC on his behalf and had one of its employees call him to take his complaint by phone. IAF, Tab 4 at 5, Tab 17 at 6. The appellant asserts that there was no written record of his complaint because he then used a Hotline number to reach an investigator. PFR File, Tab 1 at 6.

¶10 The Board has held that proof of exhaustion need not be in the form of the appellant's complaint to OSC, and that it also will consider evidence of either written correspondence or oral communications with OSC. 5 U.S.C. § 1214(a)(1)(A); *Johns v. Department of Veterans Affairs*, 95 M.S.P.R. 106, ¶¶ 15-18 (2003). The administrative judge here did not advise the appellant that evidence of his oral communications with OSC could establish exhaustion and

---

[2] With his petition for review, the appellant has submitted a copy of a pleading he filed below, IAF, Tab 17 at 5-16, and the initial decision itself. Neither constitutes new evidence. *Meier v. Department of the Interior*, 3 M.S.P.R. 247, 256 (1980) (holding that evidence that is already a part of the record is not new).

what type of evidence would suffice to do so. However, we need not determine whether the appellant satisfied the exhaustion jurisdictional element based on his oral discussions with OSC because we find that the written evidence he provided with his appeal establishes exhaustion. Specifically, the appellant submitted a copy of OSC's March 21, 2016 closure letter, IAF, Tab 1 at 9-10, wherein OSC acknowledged his complaint and specifically set forth his two alleged forms of protected activity and the three personnel actions he alleged the agency took against him based on such activity, *id.*

¶11        Pursuant to 5 U.S.C. § 1214(a)(2)(B), OSC's written statement containing its summary of relevant facts, including the facts that support, and those that do not support, the appellant's allegations, "may not be admissible as evidence in any judicial or administrative proceeding, without consent of the person who received such statement," namely, the appellant. Not only does the closure letter at issue not contain any relevant facts, IAF, Tab 1 at 9-10, but the appellant himself submitted it with his appeal and was not ordered to produce it by the administrative judge. *Cf. Bloom v. Department of the Army*, 101 M.S.P.R. 79, ¶ 10 (2006) (finding that the administrative judge erred in ordering the appellant to produce a copy of OSC's letter containing a summary of relevant facts). Further, while 5 U.S.C. § 1221(f)(2) provides that OSC's decision to terminate its investigation may not be considered in an IRA appeal, "[t]he purpose of this evidentiary rule . . . is to ensure that a whistleblower is not 'penalized' or 'prejudiced' in any way by OSC's decision not to pursue a case." *Costin v. Department of Health & Human Services*, 64 M.S.P.R. 517, 531 (1994). However, there is no statutory violation in the Board considering OSC's closure letter solely to determine the issue of exhaustion. *Lewis v. Department of Defense*, 123 M.S.P.R. 255, ¶ 10 (2016).

¶12        We therefore find that the appellant has shown by OSC's closure letter that he raised and exhausted with OSC both his claimed protected activity (assisting CFPB employees as the NTEU Chapter 335 President in filing grievances, EEO

complaints and ULPs; and testifying before Congress) and the personnel actions he claims the agency took (changing his first-line manager from someone he worked well with; slowing the disability retirement application process; and releasing his private EEO information to members of Congress).  We further find, as set forth above, that the appellant informed OSC that he believed these actions were taken in reprisal for his whistleblowing, *Johns*, 95 M.S.P.R. 106, ¶ 18, and that he has therefore established that he exhausted his remedy before OSC.

¶13        Because the administrative judge dismissed the appeal on the basis that the appellant failed to establish exhaustion, he did not consider whether the appellant made the necessary nonfrivolous allegations to support finding Board jurisdiction. Whether allegations are nonfrivolous is determined on the basis of the written record.  *Spencer v. Department of the Navy*, 327 F.3d 1354, 1356 (Fed. Cir. 2003).  We therefore can and do make those determinations now under the appropriate statutory provision.[3]

¶14        Prior to 2012, an appellant who showed exhaustion could establish the Board's jurisdiction over his IRA appeal under the Whistleblower Protection Act (WPA) by nonfrivolously alleging that:  (1) he engaged in whistleblowing activity by making a protected disclosure; and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action.  *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001).  However, the Whistleblower Protection Enhancement Act (WPEA) amended the WPA to provide that, assuming exhaustion has been shown, an appellant also may establish the Board's jurisdiction over his IRA appeal by nonfrivolously alleging that he engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and that the protected activity was a contributing factor in the

---

[3] To the extent the administrative judge set out the test for jurisdiction over an IRA appeal that was appropriate prior to the expansion of the Board's jurisdiction, ID at 2, his error did not prejudice the appellant's substantive rights because the administrative judge made no findings under the outdated jurisdictional test.  *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984).

agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 6 (2014). Amended section 2302(b)(9)(B) provides that any employee who has authority to take, direct others to take, recommend, or approve any personnel action shall not, with respect to such authority, take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant because of "testifying for or otherwise lawfully assisting any individual in the exercise of any right referred to in subparagraph (A)(i) or (ii)." Amended section 2302(b)(9)(A), in turn, prohibits the taking or failing to take, or threatening to take or fail to take, "any personnel action against an employee or applicant for employment, because of – the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation – (i) with regard to remedying a violation of paragraph (8); or (ii) other than with regard to remedying a violation of paragraph (8)." Under 5 U.S.C. § 1221(e)(1), as amended by the WPEA and subject to the provisions of 5 U.S.C. § 1221(e)(2), in any case involving an alleged prohibited personnel practice as described under 5 U.S.C. § 2302(b)(8) or § 2302(b)(9)(A)(i), (B), (C), or (D), the Board shall order corrective action as it considers appropriate if the employee, or applicant for employment, has demonstrated that a disclosure or protected activity as described under section 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D) was a contributing factor in the personnel action at issue. *Hooker v. Department of Veterans Affairs*, 120 M.S.P.R. 629, ¶ 9 (2014). Thus, the Board now has jurisdiction in IRA appeals over claims of retaliation for lawfully assisting a coworker in an appeal, grievance, or complaint proceeding.[4] *Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶ 6 (2014).

---

[4] Although 5 U.S.C. § 1221(a) limits Board appeal rights under 5 U.S.C. § 2302(b)(9)(A) to individuals who exercised appeal, complaint, or grievance rights under (i), concerning remedying a violation of section 2302(b)(8), there is no such jurisdictional restriction for individuals filing a Board appeal pursuant to 5 U.S.C. § 2302(b)(9)(B), such as the appellant in this matter.

¶15    In this appeal, the appellant alleged that he engaged in protected activity when, as union President, he represented individuals in grievances, EEO complaints, and ULPs. IAF, Tab 1 at 6. However, despite being advised by the administrative judge that a nonfrivolous allegation is an allegation of fact that, if proven, could establish a prima facie case that the Board has jurisdiction over the appeal, and how the standard may be met, IAF, Tab 16 at 3, the appellant failed to expand upon his claim, IAF, Tab 17. Under the WPEA, vague, conclusory, unsupported, and pro forma allegations do not meet the nonfrivolous pleading standard needed to establish the Board's jurisdiction over an IRA appeal. *See e.g.*, *Lewis*, 123 M.S.P.R. 255, ¶ 12; *El v. Department of Commerce*, 123 M.S.P.R. 76, ¶¶ 6-8 (2015); 5 C.F.R. § 1201.4(s) (a nonfrivolous allegation must be more than conclusory). Therefore, we find that the appellant's allegation that he engaged in protected activity by assisting others in the filing of various actions against the agency does not rise to the level of a nonfrivolous allegation that would merit finding the Board's jurisdiction over this matter.

¶16    The appellant also alleged that he engaged in protected activity when he testified before the Congressional subcommittee in June 2015. IAF, Tab 1 at 6. He described the subject of the hearing as alleged systematic discrimination at the CFPB. IAF, Tab 1 at 6; *see* IAF, Tab 9 at 11-14. However, the law is settled that disclosures that are limited to EEO matters covered under 5 U.S.C. § 2302(b)(1) and (b)(9) are excluded from coverage under section 2302(b)(8). *Applewhite v. Equal Employment Opportunity Commission*, 94 M.S.P.R. 300, ¶ 13 (2003); *see also Redschlag v. Department of the Army*, 89 M.S.P.R. 589, ¶ 84 (2001) (finding that purported disclosures that involve alleged discrimination or reprisal for engaging in activities protected by Title VII, even if made outside the grievance or EEO processes, do not constitute protected whistleblower activity under section 2302(b)(8) because they pertain to matters of discrimination covered by section 2302(b)(1)(A)). Therefore, the appellant has failed to show that, by his testifying at the Congressional subcommittee hearing, he nonfrivolously alleged

that he made a protected disclosure of whistleblowing.  Nor did he show that his testifying constituted protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), or (C) because it did not involve exercising any appeal, complaint, or grievance right, testifying or lawfully assisting an individual in such a right, or cooperating with or disclosing information to the Inspector General of an agency or the Special Counsel.  Because the appellant failed to make a nonfrivolous allegation that he made a protected disclosure under the WPA or engaged in protected activity under the WPEA, he has not established Board jurisdiction over this IRA appeal and it is properly dismissed.  *Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶ 22 (2016).

¶17      On review, the appellant argues that the administrative judge erred in having an ex parte conversation with the agency representative.  PFR File, Tab 1 at 5, Tab 4 at 5.  The record reflects that the agency representative contacted the appellant's representative on March 31, 2016, to explain that she intended to file a motion seeking a stay of discovery until resolution of the Board's jurisdiction over the matter appealed and permission to submit its file on the same date, specifically, within 25 days of the agency's receipt of the acknowledgment order.  IAF, Tab 4 at 5.  In response, the appellant filed a "motion to not extend agency timelines," claiming that the case already had been delayed multiple times.  *Id.*  The agency representative filed her motion on April 4, 2016.  IAF, Tab 5.  On the morning of April 11, 2016, the agency representative notified the appellant and his representative by email that she intended to call the administrative judge at noon that day regarding the status of her motion, and asked if the appellant wished to participate in the phone call.[5]  IAF, Tab 7 at 5.  On that same day, the administrative judge granted the agency's motion for an extension of time.  IAF, Tab 6.  The appellant filed a motion with the administrative judge in which he

---

[5]  According to the agency representative, she left a voicemail message for the administrative judge regarding this matter, but the administrative judge did not return the call and the two never spoke.  PFR File, Tab 3 at 7.

argued that his representative had not been given sufficient notice to participate in the agency representative's conversation with the administrative judge. IAF, Tab 7 at 5.

¶18    An ex parte communication is an oral or written communication between a decision-making official of the Board and an interested party to a proceeding, when that communication is made without providing the other parties to the appeal with a chance to participate. 5 C.F.R. § 1201.101. Here, the agency representative did provide the appellant's representative with an opportunity to participate in the conversation, albeit not a lengthy one. Therefore, the agency representative's communication with the administrative judge was not an ex parte communication. In any event, administrative judges are not prohibited from engaging in ex parte conversations regarding procedural matters, such as extensions of time. *See Vidal v. Department of Justice*, 113 M.S.P.R. 254, ¶ 6 (2010) (finding that ex parte communications regarding procedural matters are not prohibited); 5 C.F.R. §§ 1201.101-.102 (prohibiting ex parte communications regarding the merits, as opposed to procedural aspects, of matters before the Board). We thus find that the appellant has not established any error on the part of the administrative judge in this matter.

¶19    Finally, the appellant contends on review that the administrative judge was biased against him. PFR File, Tab 1 at 5. In support of his claim, the appellant refers to the administrative judge having granted the agency representative's motion for an extension of time after the alleged ex parte communication between them, and the administrative judge's issuing his initial decision on the same day the agency representative submitted her response to the administrative judge's order on jurisdiction and proof requirements. *Id.* In making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980). To establish that an administrative judge was biased, a party generally must show that any such bias

constitutes extrajudicial conduct, rather than conduct arising in the administrative proceeding. *Ali v. Department of the Army*, 50 M.S.P.R. 563, 568 (1991). An administrative judge's conduct during the course of a Board proceeding warrants a new adjudication if the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). The appellant has failed to make such a showing as to the administrative judge's conduct during the Board proceeding.[6] To the extent the appellant felt disadvantaged in his ability to present his case because his representative is not an attorney, PFR File, Tab 1 at 5, Tab 4 at 5, it is well established that an appellant is responsible for the errors of his chosen representative. *Sofio v. Internal Revenue Service*, 7 M.S.P.R. 667, 670 (1981).

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory

---

[6] The appellant also argues on review that, during the proceedings below, he requested that the administrative judge be removed from the case, but that his request "went unanswered." PFR File, Tab 1 at 5; IAF, Tab 7 at 7. Because we have found that the appellant's assertions do not establish bias on the part of the administrative judge, we further find that they did not provide a basis for his recusal, and that his failure to rule on that request did not prejudice the appellant's substantive rights. *Panter*, 22 M.S.P.R. at 282.

deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below: http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at

http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                    _____
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.